# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 20-mj-8033-JPO |
| ) | |
| NICHOLAS NEWMAN, ) | |
| ) | |
| Defendant. ) | |

# CRIMINAL COMPLAINT

I am a law enforcement officer with the Kansas City Kansas Police Department. Prior to becoming a law enforcement officer, I earned a bachelor's degree in Law Enforcement/Justice Administration from Western Illinois University and later earned Master's Degree in Criminal Justice from the University of Central Missouri. In July 2016, I became a detective with the Kansas City Kansas Police Department. Currently I am assigned to the Alcohol, Tobacco, and Firearms (ATF) as a task force officer (TFO). I have investigated a variety of crimes that range from property crimes, narcotics investigations, and crimes against persons. During the course of my employment, I have received training in investigations, and I have participated in numerous investigations which led to the prosecution of suspects. I have received training in criminal investigations and my duties include the investigation of federal firearms violations. During the course of my employment, I have been directly involved in numerous investigations which led to the prosecution of suspects for the unlawful use and possession of firearms.

Being duly sworn, I declare and state the following is true and correct to the best of my knowledge and belief:

## COUNT 1

On or about February 6, 2020, in the District of Kansas, the defendant,

**NICHOLAS NEWMAN,**

knowing he had been convicted of a crime punishable by imprisonment for a term exceeding one year, to wit: in 2019, Criminal Possession of a Firearm, in Wyandotte County, Kansas District Court, case number 2019CR0917, a crime punishable under the laws of the United States by imprisonment for a term exceeding one year, knowingly and unlawfully possessed a firearm and ammunition, to wit: a Ruger Model P234 .45 caliber pistol bearing serial number 664-96451 and ammunition in and affecting interstate and foreign commerce.

This was done in violation of Title 18, United States Code, Sections 922(g)(1) and 924(a)(2).

## COUNT 2

On or about February 6, 2020, in the District of Kansas, the defendant,

**NICHOLAS NEWMAN**,

did assault E.G., a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives, a person having lawful charge, custody, and control of United States money and other property of the United States, to wit: a Ruger Model P234 .45 caliber pistol bearing serial number 664-96451, with intent to rob, steal and purloin said money and other property of the United States, and in doing so the defendant, put the life of the said E.G. in jeopardy by the use of a dangerous weapon, that is: a Ruger Model P234 .45 caliber pistol bearing serial number 664-96451, in violation of Title 18, United States Code, Section 2114.

## COUNT 3

On or about February 6, 2020, in the District of Kansas, the defendant,

**NICHOLAS NEWMAN,**

forcibly assaulted, resisted, opposed, impeded, intimidated, and interfered with E.G., a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives, while Special Agent E.G. was engaged in the performance of her official duties, and inflicted bodily injury and used a dangerous and deadly weapon, to wit: a Ruger Model P234 .45 caliber pistol bearing serial number 664-96451.

This was in violation of Title 18, United States Code, Section 111(a)(1) and 111(b).

## COUNT 4

On or about February 6, 2020, in the District of Kansas, the defendant,

**NICHOLAS NEWMAN,**

knowingly possessed, used, and carried a firearm, to wit: a Ruger Model P234 .45 caliber pistol bearing serial number 664-96451, during and in relation to a crime of violence for which he may be prosecuted in a court of the United States, that is: Assaulting, Resisting, or Impeding a Officer of the United States, in violation of Title 18, United States Code, Section 111(a) and 111(b), as alleged in Count 3.

This was all in violation of Title 18, United States Code, Sections 924(c)(1)(A), 924(c)(3)(A), and 2.

## STATEMENT OF FACTS

This complaint is based on the following facts, which are known to me as a result of my personal participation in this investigation, and from reports made to me by other members of law enforcement:

1. On February 06, 2020, agents with the Bureau of Alcohol, Tobacco, Firearms, and Explosivese (ATF) were conducting an undercover operation focused on an individual by the

name of Nicholas NEWMAN. Agents had purchased narcotics and a firearm from NEWMAN in the past weeks leading up to the planned operation.

2. Days earlier, NEWMAN contacted ATF SA Elizabeth Gentry and told her he had "Bang" for sale. A "Bang" is believed to a known street name for a firearm. ATF SA Gentry and NEWMAN planned to purchase the firearm from NEWMAN on February 06, 2020 at the Sunfresh grocery store located at 241 S. 18th Street in Kansas City, Kansas.

3. At approximately 1850 hours, ATF SA Gentry and ATF SA Evans acting in an undercover capacity drove to the Sunfresh grocery store parking lot. They parked their UC vehicle in the west side of the parking lot and contacted NEWMAN to carry out the transaction. Shortly after, NEWMAN was observed walking through the parking lot of the Sunfresh while talking to ATF SA Gentry on the phone.

4. At approximately 1905 hours, NEWMAN was observed by surveillance making contact with the agents in the UC vehicle and was observed standing outside the front passenger seat. ATF SA Gentry was in the driver seat of the vehicle, and ATF SA Evans was in the front passenger seat. NEWMAN was observed by surveillance making a waving motion. Seconds later a vehicle was observed pulling up behind the UC vehicle. NEWMAN then walked over to the car that pulled behind the UC vehicle.

5. At approximately 1909 hours, NEWMAN again walked back to the UC vehicle and spoke with agents from outside the front passenger seat. Audio/video from within the UC vehicle captured NEWMAN and ATF Gentry talking about the firearm transaction. NEWMAN asked ATF SA Gentry for the money first and he would go get the firearm from the vehicle behind the UC vehicle. ATF SA Gentry told NEWMAN she would like to see the firearm first before giving NEWMAN the money. NEWMAN then told ATF SA Gentry he would go get the firearm.

6. NEWMAN was again observed walking back to the vehicle behind the UC vehicle. He appeared to enter the vehicle and then walked back to the UC vehicle and entered the front passenger seat. ATF SA Evans had moved to the back of the UC vehicle. NEWMAN pulled out a black pistol from his right pocket of his jacket and handed the firearm to ATF SA Gentry. ATF SA Gentry then took possession of the firearm, placing it on the floorboard area of the driver seat area.

7. ATF SA Gentry gave NEWMAN $400.00 in official United States currency provided by the ATF. NEWMAN counted the money and put the money in his jacket. ATF SA Gentry asked if the firearm came with a clip and NEWMAN said it did.

8. NEWMAN then reached down towards the firearm next to ATF SA Gentry. NEWMAN grabbed the gun and tried to pull the firearm away. A violent struggle ensued resulting in bodily injury to ATF SA Gentry. During the struggle, ATF SA Gentry was able to grab the firearm and NEWMAN and Gentry continued to struggle over the firearm. ATF SA Gentry screamed "No" multiple times and screamed "Help, Help, Help." NEWMAN was heard saying, "Hold on, I'm trying to put the clip in it." According to ATF SA Gentry she was in fear for her life during the struggle over the firearm. During the struggle, ATF SA Evans was able to grab NEWMAN from behind to assist ATF SA Gentry. According to ATF SA Evans she was in fear of for her life during the struggle for the firearm.

9. Shortly after the struggle started, ATF surveillance units arrived to assist the UC agents. The agents conducting the surveillance instructed NEWMAN to, "Drop it and let go." NEWMAN complied with verbal direction from agents and was removed from the vehicle and taken into custody.

10. ATF agents were also able to contact three other individuals in the vehicle parked behind

the UC vehicle and those individuals were detained and interviewed by KCKPD detectives.

11.     Once the scene was secure, Kansas City Kansas Police Department Crimes Scene Investigators (CSI) arrived on scene to take photographs and collect evidence. A Ruger Model P234 .45 caliber pistol, bearing serial number 664-96451, was recovered from the vehicle along with a magazine containing nine .45 caliber bullets.

12.     ATF TFO Blackman and ATF TFO Fincher interviewed NEWMAN in the Kansas City, Kansas Police Department narcotic room. NEWMAN was read his rights and waived his rights and provided a statement. NEWMAN said he had done some deals in the past with female who he encountered tonight and was supposed to sell her a firearm. NEWMAN said the firearm actually belonged to his friend, "Weddo," and was selling the firearm to the female for "Weddo" NEWMAN said he was dropped off at the Sunfresh grocery store. He called "Weddo" and had "Weddo" show up at the Sunfresh so they could sell his gun. NEWMAN described the gun as a .45 Ruger. "Weddo" arrived in a vehicle with some other people. NEWMAN remembered giving her the gun and she put it under her feet. He then got money from the girl and the girl asked for a clip. NEWMAN said he got the clip out of his pocket and tried to get the gun to put the clip in the gun because he didn't feel comfortable giving her the clip with the gun. NEWMAN went on to say, when he reached down for the firearm, it all went bad. NEWMAN said his intention wasn't to rob the girl. ATF TFO Fincher asked NEWMAN what he would think if someone tried to grab the gun and put a clip in it and NEWMAN replied, "Probably try to rob em." NEWMAN told both ATF TFO's he knew he was a felon and wasn't supposed to have firearms.

13.     TFO Blackman spoke with ATF Special Agent Waters about the Ruger. 45 recovered from the UC vehicle. ATS SA Waters was able to confirm the firearm was not manufactured in

the state of Kansas, but traveled in or affected interstate and/or foreign commerce. A formal nexus report will be done in the coming days.

14. A criminal history check was conducted, Nicholas NEWMAN was convicted of Criminal Possession of a Firearm in Wyandotte County, Kansas District Court in case number 2019CR0917. He was sentenced on 11/27/2019 to 17 months to the Kansas Department of Corrections.

WHEREFORE, your affiant respectfully requests that an arrest warrant be issued authorizing the ATF, with appropriate assistance from other law enforcement officers, to arrest NICHOLAS NEWMAN for the aforementioned violations of federal law.

The foregoing is true and correct to the best of my information and belief.

_____
Detective Jakob Blackman
ATF Task Force Officer

Sworn to and attested by affiant via telephone after being submitted to me by reliable electronic means on February 7, 2020.

_____
HONORABLE JAMES P. O'HARA
Chief United States Magistrate Judge
District of Kansas

# PENALTIES

**Count 1: Felon in Possession of a Firearm/Ammunition 18 U.S.C. §§ 922(g)(1) and 924(a)(2)**

- NMT 10 years imprisonment;
- NMT $250,000 fine;
- NMT 3 years supervised release; and
- $100 special assessment fee.

**Count 2: Robbery of United States Property Resulting in Injury or Placing Life in Jeopardy by Use of a Dangerous Weapon 18 U.S.C. §§ 2114 and 2**

- NMT 25 years imprisonment;
- NMT $250,000 fine;
- NMT 3 years supervised release; and
- $100 special assessment fee.

**Count 3: 18 U.S.C. § 111(a)(1) and 111(b) (Forcible Assault of a Federal Officer Using a Dangerous Weapon)**

- NMT 20 years Imprisonment
- NMT $250,000 fine
- NMT 3 years Supervised Release
- $100 Special Assessment

**Count 4: Possession, Use, and Brandishing of a firearm in furtherance of a crime of violence, 18 U.S.C. §§ 924(c)(1)(A), 924(c)(3)(A), and 2**

- NLT 5 years NMT life imprisonment consecutive to any other sentence imposed,
- NMT 5 years supervised release;
- NMT a $250,000 fine; and
- $100.00 special assessment fee.

If the firearm was brandished the penalties are:

- NLT 7 years NMT life imprisonment consecutive to any other sentence imposed,
- NMT 5 years supervised release;
- NMT a $250,000 fine; and
- $100.00 special assessment fee.

If the defendant has previously been convicted and sentenced for a § 924(c) offense the penalties are:

- NLT 25 years NMT life imprisonment consecutive to any other sentence imposed,
- NMT 5 years supervised release;
- NMT a $250,000 fine; and
- $100.00 special assessment fee.